Jack Silver, Esquire  SB # 160575
LAW OFFICE OF JACK SILVER
Post Office Box 5469
Santa Rosa, California 95402-5469
Telephone: (707) 528-8175
Facsimile: (707) 528-8675
Email: lhm28843@sbcglobal.net

Edward E. Yates, Esquire  SB # 135138
LAW OFFICE OF EDWARD E. YATES
1000 Fourth St. Suite 800
San Rafael, CA 94901
Telephone: (415) 526-6314
Email: eyates@marinlandlaw.com

Attorneys for Plaintiff
CALIFORNIA RIVER WATCH

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA RIVER WATCH, a 501(c)(3) non-profit, Public Benefit Corporation,<br><br>Plaintiff,<br><br>v.<br><br>PINOT HILL, LLC; DOES 1-10, Inclusive,<br><br>Defendants. | Case No: 15-cv-00150 JCS<br><br>[~~PROPOSED~~] CONSENT DECREE AND ORDER<br><br>COMPLAINT FILED: January 12, 2015<br><br>Honorable Joseph C. Spero<br>U.S. Magistrate Judge |

## I.  RECITALS

Defendant PINOT HILL, LLC ("Pinot Hill") is a landowner and developer of property located at 5215 Blank Road, Sebastopol, California, assigned Sonoma County Assessor's Parcel Number 062-130-034 (the "Property"), which is the subject of the Complaint.

Plaintiff California River Watch ("CRW") has filed this action pursuant to the citizen suit provision of the federal Endangered Species Act ("ESA") 16 U.S.C. § 1531 *et seq.*, codified at 16 U.S.C. § 1540(g)(1)(A), to enjoin Pinot Hill from alleged ongoing violations of the ESA and alleged violations of regulations pertaining to the Sonoma

1  California Tiger Salamander ("SCTS") listed as endangered pursuant to ESA § 4.

2  Pinot Hill does not admit any of the allegations contained in the Complaint, and neither Pinot Hill's consent to entry of this Consent Decree nor any provision herein shall be construed as an admission of fact or liability for any purpose whatsoever.

CRW and Pinot Hill (the "Parties") have consented to the entry of this Consent Decree and Order without trial of any issues, and without admission by Pinot Hill of any alleged liability, violation or wrongdoing. The Parties have chosen to resolve in full CRW's allegations as set forth in the Complaint, and hereby stipulate that, in order to settle the claims alleged against Pinot Hill in CRW's Complaint and to avoid the delays and expenses of litigation, this Consent Decree should be entered. In mutual consideration for the resolution of CRW's allegations, the Parties agree to the terms described herein. This Consent Decree constitutes a final judgment with respect to and a settlement of disputed claims.

The Court having considered the representations of the Parties, NOW THEREFORE, before taking any testimony, and without any adjudication of any fact or law, it is hereby ORDERED, ADJUDGED and DECREED as follows:

## II.   CONSENT DECREE

1. <u>Jurisdiction</u>. The Court has jurisdiction over the subject matter and the Parties to this action pursuant to ESA § 11(g)(1)(A), 16 U.S.C. § 1540(g)(1)(A). The basis for assignment of this case to the Northern District of California, pursuant to 16 U.S.C. § 1540(g)(3)(A), is that the violations of the ESA complained of herein are alleged to have taken place on property and land located within this District; and, pursuant to 28 U.S.C. § 139, Pinot Hill conducts business within this District.

2. <u>Effective Date</u>. The Effective Date of this Consent Decree shall be the last date on which the signature of a party to this Consent Decree is executed.

3. <u>Required Tasks</u>. Without any admission of fact, wrongdoing, or liability, Pinot Hill agrees to the following:

   a. <u>Enhanced Creek Area: Rehabilitation of Incised Creek Bed and</u>

<u>Riparian Zone to Constrain Dry-season Dispersal of Bullfrogs</u> – The creek, which is located above and below the road crossing to the vineyard, is deeply incised (degraded; near-vertical banks, deep erosion and narrow bed). Within six (6) months from the Effective Date of this Consent Decree, Pinot Hill will employ Enterra Associates, Inc., to design a stream restoration project, to include grade control. As part of the creek enhancement, Pinot Hill and Enterra Associates, Inc., shall consider and may include installation of persistent large woody debris ("LWD") or other rip rap; including but not limited to seasoned eucalyptus logs, at intervals along the incised reaches of the creek, if recommended by Enterra Associates, Inc., and approved by the California Department of Fish and Wildlife. Work will commence as soon after all necessary approvals have been granted and conditions allow, to be completed on or before October 1, 2017. Pinot Hill shall obtain all necessary permits, from relevant regulatory agencies, e.g., Sonoma County, San Francisco Regional Water Quality Control Board, and U.S. Army Corps of Engineers.  One of the objectives of the stream restoration project is to provide sufficient grade control to prevent further incision and to induce bed aggradation sufficient to restore seasonal above-surface flows, and eliminate incised deep perennial pools that provide efficient stream dispersal corridors and breeding habitat that would be likely to adversely affect any seasonal SCTS.

From the Effective date of this Consent Decree and for the duration of its ownership and/or control of the Property, Pinot Hill shall preserve the enhanced creek area in its enhanced state, but shall not be required to do any maintenance or other work in areas that maintain year round water. Pinot Hill shall not block the creek from filling with water naturally from rainfall and runoff, or prevent the creek from draining naturally from soil infiltration and flow except that Pinot Hill shall be permitted to maintain the enhanced creek area to ensure proper water drainage in order to prevent water stagnation attractive to mosquitoes or flooding. Any such maintenance of the creek area shall occur only: (1) during times when the creek does not contain water; or (2) if there is an emergency that requires immediate action, including but not limited to flash flooding and

fire.

Pinot Hill shall not disturb the native soils or vegetation inside the present fenced areas (see attached map, Exhibit A) including, but not limited to, the use of equipment or mowing (except during June through August) and except as necessary to maintain and/or repair the creek enhancement. Pinot Hill shall comply with the terms in Section 3(B) of this agreement regarding pesticide use in the fenced in area portion of the enhanced creek, so long as such activities do not "harass" or "harm" SCTS, as those terms are interpreted within the meaning of Section 9 of the ESA.  Notwithstanding any other provision in this Consent Decree, the Parties agree that Pinot Hill's obligation under this Subsection A is in effect only so long as the SCTS is a listed species within the meaning of ESA.

   b. <u>Pesticide Use</u> – From the Effective Date of this Consent Decree and for the duration of its ownership and/or control of the Property, Pinot Hill shall refrain from the application on said land of any herbicide, rodenticide or other chemical agents (collectively, "Chemical Agents")  generally known to be harmful to SCTS. For clarity with regard to use and limitations and to which Chemical Agents are permitted on the Property, Pinot Hill may rely on the California Department of Pesticide Regulation's Endangered Species Custom Realtime Internet Bulletin Engine ("PRESCRIBE") online database application, as applied to the Property. Notwithstanding any other provision in this Consent Decree, the Parties agree that Pinot Hill's obligation under Subsection B is in effect only so long as the SCTS is a listed species within the meaning of ESA.

   c. <u>Enhancement of Upland SCTS Habitat to Maintain SCTS Mammal Burrow Habitat and Invertebrate Prey Base</u> – Three tasks are proposed to enhance upland habitat quality for SCTS by maintaining small mammal burrow habitat and terrestrial invertebrate prey below ground during the dry season.  The task for low tillage/no-till cover crops between vine rows consists of modifying species composition of native grasses, forbs, and corms (bulbs) with equal or superior compatibility with grapevine rows (low competition during the grape growing season due to summer dormancy or

quiescence of native grassland species).

    c.1. <u>Low-till/no-till mown vineyard row cover crop management</u>. Eliminate tillage to periods of vine replacement, and cease tillage between vine rows after replanting vines, except when necessary due to water erosion. In such case, the soil will be tilled and re-leveled with reseeding as set forth below. Any future cover crop installations, including always after any erosion control tillage has been performed, shall include alternative cover crops between rows that can be mowed, but do not require annual tillage. Defendants shall use native cover crop seed. The seeded species mixes should include perennial and annual native species such as blue wildrye (*Elymus glaucus*), and/or purple needlegrass (*Stipa pulchra*), and/or blue dicks (*Dichelostemma capitatum, D. congestum*), *Brodiaea spp.* (terrestrial species), and/or lupines (*Lupinus nanus* or *L. bicolor;* nitrogen fixing annual forbs), and/or two insect-pollinated Clarkia species (*C. amoena, C. purpurea*). Seed mixes may also include low-growing summer-active tarweeds (*Madia sativa, Hemizonia congesta*), Madia elegans. (For details and examples, see from the Sonoma County Agricultural Commission's "Best Management Practices for Agricultural Erosion and Sediment Control, e.g. VESCO riparian BMP 5.2, and cover crop BMPs 3.3., 3.4, and 3.6.) If Pinot Hill desires to apply other native plant seed for a cover crop than those listed in the preceding paragraph, Pinot Hill shall notify CRW. Upon Plaintiff's request, Defendant shall demonstrate compliance with the cover crop management requirements of this Consent Decree annually by providing CRW with date-stamped photographs of the native cover crop around the Property, within 30 days of such request.

    c.2. <u>Perennial native creeping wildrye riparian border grassland buffer zone establishment</u>. Grassland strips bordering the vineyard, where blue gum eucalyptus windbreak plantings do not provide shade and litter, shall be planted with local southern Sonoma strains of creeping wildrye (*Elymus triticoides;* syn. *Leymus triticoides*). This species shall be planted for three years with seeds in late fall/early winter immediately following the first soil-moistening rainfall (wetting depth 6 inches)

during cool, moist weather. If annual weedy grasses and broadleaf weeds emerge and grow to a height more than 6 inches high prior to planting creeping wildrye, they shall be mown as low as possible prior to planting. In moist or shaded zones, native creeping sedges (*Carex barbarae, C. praegracilis*) may be included or substituted in the planting mix. Plug transplanting may be substituted for seeding of perennial native grasses and sedges, but is not required.

4. <u>Payment of Fees and Costs</u>. CRW has incurred extensive fees and costs in the prosecution of this action, as detailed in Exhibit B to this Consent Decree. Pinot Hill will pay CRW fees and costs in the amount of $15,000.00 within 60 days of entry of this Consent Decree. Payment shall be made in the form of a single check payable to "California River Watch" and mailed to the Law Office of Jack Silver, 100 E Street, Suite 318, Santa Rosa, CA 95404.

5. <u>Task Confirmation</u>. Within sixty (60) days of the completion of any of the remedial measures identified in Sections II. 3.A, 3.B. and 3.C. of this Consent Decree, Pinot Hill shall provide CRW with written confirmation that the task has been completed. In addition to the other confirmation provisions, Pinot Hill will annually, during the time of its ownership or control of the Property, provide date-stamped photographs of the Enhanced Creek Area taken anytime between February 1 and March 15. If photographs have not been provided in a particular year, Pinot Hill will not be in violation of this order, but within thirty (30) days receipt of written notice of the failure to so provide, Pinot Hill will then take date stamped photographs and provide them to CRW.

6. <u>Dismissal of Claims</u>. Upon the entry of this Consent Decree, CRW shall file with the court a dismissal with prejudice of all claims alleged against Pinot Hill in the Complaint.

7. <u>Release and Covenant Not To Sue</u>. In consideration for Pinot Hill's agreement to perform the tasks described in Sections II 3.A-D, CRW covenants not to sue for and does hereby forever release, generally and specifically, and forever discharge Pinot Hill from, any and all claims, demands, and causes of action of any kind

whatsoever, whether known or unknown, suspected or unsuspected, asserted in the Complaint which CRW could have brought under the ESA or within the ESA Complaint regarding the subject properties, or which have arisen or may arise from the conduct underlying the allegations in the Complaint, including, without limitation: (a) any common law claims; and (b) any claims arising under municipal, local, state, or federal ordinances, statutes, or other laws including, but not limited to, Sections 7, 9, or 10 of the ESA, 16 U.S.C. § 1531 et seq., and any regulations promulgated pursuant to any municipal, local, federal and state ordinance, statute, or other law that may arise from the conduct underlying the allegations in the Complaint.

8. <u>Dispute Resolution</u>. Any disputes with respect to any of the provisions of this Consent Decree shall be resolved through the following procedure:

   a. The Parties covenant and agree that, if either party believes the other is in violation of one or more terms of the Consent Decree, the party shall provide notice to the other in writing of what actions or inactions they deem to be in violation of this Consent Decree. Within thirty (30) days of receipt of such notice, the party receiving the notice shall respond to the notice in writing. If the Parties still dispute compliance with this Consent Decree, within an additional thirty (30) days, the Parties will meet and confer in a good faith attempt to resolve their dispute.

   b. If the Parties cannot informally resolve the dispute pursuant to the procedures set forth in subsection A, either party may seek relief through a claim filed before the Honorable Magistrate Judge Joseph C. Spero who will retain jurisdiction over this Consent Decree. In the event that either party brings an action to enforce its rights under this Consent Decree, the relief the court is empowered to award is limited to injunctive relief to take action specified in this Consent Decree, and each party shall bear its own attorneys' fees and costs incurred in such a proceeding.

9. <u>Notices</u>. All notices, consents, approvals, requests, demands and other communications (collectively, "Notice") which the Parties are required or desire to serve upon or deliver to the other Party shall be in writing and shall be given by nationally-

recognized overnight courier, by certified United States mail, return receipt requested, postage prepaid, addressed as set forth below, or by electronic mail addressed as set forth below:

| | |
|---|---|
| If to CRW: | Edward E. Yates, Esquire<br>Law Office of Edward E. Yates<br>1000 Fourth Street, Suite 800<br>San Rafael, CA 94901<br>Tel: (415) 526-6143<br>Email: eyates@marinlandlaw.com |
| If to Pinot Hill: | Willard A. Carle, III, Esq.<br>Carle, Mackie, Power & Ross LLP<br>100 B Street, Ste. 400<br>Santa Rosa, CA 95401<br>Tel. 707-526-4200<br>Email: Bcarle@cmprlaw.com |

The foregoing addresses may be changed by Notice given in accordance with this Section. Any Notice sent by certified mail shall be deemed received on the date shown in the proof of delivery. Any Notice sent by electronic mail shall be deemed received upon electronic transmission thereof provided that the sender does not receive electronic notice of non-delivery. Any Notice sent by overnight courier service shall be deemed received on the day of actual delivery as shown by the confirmation of delivery by the messenger or courier service. If the date of receipt of any Notice to be given hereunder falls on a weekend or legal holiday, then such date of receipt shall automatically be deemed extended to the next business day immediately following such weekend or holiday for purposes of calculating time periods commencing upon the date of service.

10.     <u>Attorneys' Fees and Costs</u>.  Except as set forth in Section II.3.D above, each party shall bear its own past and future costs and attorneys' fees relating to the subject matter of this Consent Decree.

11.     <u>Parties' Acknowledgment of Terms</u>.  This Consent Decree has been carefully and fully read and reviewed by CRW and Pinot Hill and their respective counsel, who hereby represent that the contents of this Consent Decree are understood,

and agree that this Consent Decree is binding on each party or its respective predecessors, successors, and assigns and as described above.

12. <u>Interpretation and Applicable Law</u>. This Consent Decree shall be construed and interpreted in accordance with the laws of the United States and the State of California without regard to principles of conflicts of law. This Agreement shall be interpreted and construed as a whole, according to its fair meaning and not strictly for or against any party, and without regard to which party drafted the Agreement. All of the promises, representations, and warranties contained in this Agreement survive the execution of this Agreement.

13. <u>Counterparts</u>. This Consent Decree may be executed in multiple counterparts, each of which shall evidence one and the same document.

14. <u>Entire Consent Decree In Writing</u>. This Consent Decree constitutes the entire agreement between the Parties hereto with respect to the subject matter set forth herein and supersedes all previous or contemporaneous negotiations, commitments (oral or written), and writings with respect to the subject matter set forth herein.

15. <u>Modification or Amendment</u>. This Consent Decree or any of its provisions may be modified or amended only by written document executed by all Parties to this Consent Decree.

16. <u>Severability</u>. The invalidity or unenforceability of any provision of this Consent Decree shall in no way affect the validity or enforceability of any other provision. If, in any action before any court or other tribunal of competent jurisdiction, any term, restriction, covenant, or promise is held to be unenforceable for any reason, then such term, restriction, covenant, or promise shall be deemed modified to the extent necessary to make it enforceable by such court or other tribunal and, if it cannot be so modified, that this Consent Decree shall be deemed amended to delete herefrom such provision or portion adjudicated to be invalid or unenforceable, and the remainder of this Consent Decree shall be deemed to be in full force and effect as so modified. Any such modification or amendment in any event shall apply only with respect to the operation of

1 this Consent Decree in the particular jurisdiction in which such adjudication is made.

2     17.   <u>Representations and Warranties</u>.  This Consent Decree is given voluntarily, free of undue influence, coercion, duress, menace, or fraud of any kind. Neither party, nor any officer, agent, employee, representative, or attorney of or for either party, has made any statement or representation to the other party regarding any fact relied upon in entering this Consent Decree, and no party to this Consent Decree is relying upon any statement, representation, or promise of the other, nor of any officer, agent, employee, representative, or attorney of or for either party, in executing this Consent Decree or in making the settlement provided herein, except as expressly stated in this Consent Decree.

    18.   <u>Parties Bound By This Agreement and Length of Agreement</u>.  This Agreement, and each of its provisions, including all representations, warranties, and promises contained herein, binds, and inures to the benefit of CRW and Pinot Hill, and each of their respective officers, directors, members, employees, contractors, heirs, assigns, present and future affiliates, parents, subsidiaries, predecessors and successors in interest whether by merger, consolidation, or otherwise, as well as their respective representatives, agents, and administrators, past, present, and future.

    19.   <u>No Third Party Beneficiaries</u>.  This Consent Decree is not intended to confer any rights or obligations on any third party or parties, and no third party or parties shall have any right of action under this Consent Decree for any cause whatsoever. Subject only to the express restrictions contained in this Consent Decree, all of the rights, duties and obligations contained in this Consent Decree shall inure to the benefit of and be binding upon the Parties, and their successors and assigns.

    20.   <u>Authority</u>.  Each of the persons signing this Consent Decree on behalf of an entity represents and warrants that he or she has actual authority and capacity to execute this Consent Decree on behalf of the entity and to bind it to all of the terms of this Consent Decree.

    21.   <u>Final Judgment</u>.  Upon entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment of the Court as to the matters addressed

herein.

IN WITNESS WHEREOF, the undersigned have caused this Consent Decree to be executed by their duly authorized representatives.

Dated: November 24, 2015    CALIFORNIA RIVER WATCH

By: _____
Larry J. Hanson
Board President

Dated: November 30, 2015    PINOT HILL, LLC

By: _____
Kirk Pokka

IT IS SO ORDERED.

Dated and entered into this 1st day of December, 2015.

_____
JOSEPH C. SPERO
UNITED STATES MAGISTRATE JUDGE

*Judge Joseph C. Spero*

Shore Rd

Culvert

Culvert

Black Rd. →

EXHIBIT A.1

## Proposed seasonal creek restoration at 5215 Blank Rd.

Solid pink line indicates proposed area of project.

Solid black line indicate 7' deer fence

Sold red lines indicate 36" sheep fence. Fence keeps sheep out of creek, but allows wildlife passage.

Solid blue line indicates Blue line stream. (Year round water)

Dashed blue line indicates seasonal water. Usually from November to May.

EXHIBIT A.2

**PLAINTIFF'S ITEMIZATION OF COSTS AND ATTORNEYS' FEES**
California River Watch v.  Pinot Hill - Case No: 15-cv-00150 JCS

| DESCRIPTION OF COSTS | AMOUNT |
|---|---:|
| Filing Fee | 400.00 |
| Reproduction[1] | 123.00 |
| Postage | 87.00 |
| Legal Research Services | 511.00 |
| Expert Fees[2] | 6161.50 |
| Paralegal Services | 410.00 |
| Investigator/Investigation | 622.00 |
| Travel Related | 110.10 |
| **TOTAL COSTS** | **8424.60** |

[1]**REPRODUCTION**

| | |
|---|---:|
| Government records | 67.00 |
| Public records | 13.00 |
| Visuals | 19.00 |
| Other | 24.00 |
| **Reproduction Total** | **123.00** |

[2]**EXPERT FEES**

| | |
|---|---:|
| Biologist | 4190.00 |
| CNDDB | 1971.50 |
| **Expert Fees Total** | **6161.50** |

**ATTORNEYS' FEES**

| | |
|---|---:|
| Ed Yates 43.9 hours at $525 per hour | 23047.50 |
| Jack Silver 21 hours at $575 per hour | 12075.00 |
| **Attorneys' Fees Total** | **35122.50** |

**TOTAL COST AND FEES $ 43,547.10 (as of October 1, 2015)**

(Anticipated Cost and Fees for Compliance Monitoring @$3,000 - $5,000)

**EXHIBIT B**